IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
SEPTEMBER SESSION, 1997

FILED

December 18, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9611-CR-00469 |
| | ) | |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| | ) | |
| V. | ) | |
| | ) | HON. THOMAS H. SHRIVER, JUDGE |
| BENJAMIN F. WARNER, | ) | |
| | ) | |
| Appellant. | ) | (VOLUNTARY MANSLAUGHTER) |

FOR THE APPELLANT:

KARL DEAN
District Public Defender

JEFFREY A. DeVASHER
Assistant Public Defender
1202 Stahlman Building
Nashville, TN  37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

KAREN M. YACUZZO
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

VICTOR S. JOHNSON, III
District Attorney General

NICHOLAS BAILEY
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue South
Nashville, TN  37201

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# <u>OPINION</u>

The Defendant, Benjamin F. Warner, appeals as of right from his sentence of eight (8) years in the Tennessee Department of Correction. Defendant pled guilty to the charge of voluntary manslaughter with an agreed mandatory sentence of eight (8) years to be imposed, with the manner of service of the sentence to be determined by the trial court. After a hearing, the trial court sentenced Defendant to eight (8) years of incarceration as a Range II Multiple Offender to be served at a rate of thirty-five percent (35%), but denied probation and alternative sentencing. Defendant argues that the trial court erred in imposing a sentence of continuous confinement.

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a <u>de novo</u> review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement

that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the sentencing hearing, the victim's sister, Georgia Hightower, testified as to how the loss of her sister had affected her life. She stated that her sister was thirty-one (31) years of age and was in good health when she was killed. Cathy Edmondson testified for the Defendant. Edmondson stated that she had known the Defendant for thirty-five (35) or forty (40) years, and that over the years he had helped her to do things she could not do by herself. His health is progressively getting worse, and she knew he had problems walking. She described an incident between the victim and the Defendant in which the victim became hostile with the Defendant and Edmondson talked with her to calm her down. She described the Defendant as a good person with no previous episodes of violence.

The Defendant testified on his own behalf. He described his health problems as including throat cancer, high blood pressure and recurrent leg problems from an old injury. He is receiving medical attention for both his throat

cancer and the high blood pressure, but did not go into detail as to any treatment he was receiving other than taking pills. The Defendant stated that he was seventy-two (72) years old and the victim was forty (40) years old at the time of the shooting.

When asked to describe the events preceding the shooting, Defendant stated he was sitting in the corner of his bedroom in a chair and the victim asked him for some money. Defendant handed her a twenty (20) dollar bill and she started to fuss with him. As the victim went into the kitchen, the Defendant stated that he believed she was getting a butcher knife out of her purse. His pistol was lying nearby, so he grabbed the gun and shot her when she walked back into the room. While he does admit to shooting her, the Defendant testified that his intention when he picked up the gun was "just keep her off of me was what I was trying to do, to keep her from getting to me. It wasn't my intention of killing her." He then dialed 911 and advised the dispatcher of the incident.

Defendant described his relationship with the victim as one with problems, and that he had called 911 four (4) different times when the victim was beating him. He admitted that he did not ever have the victim arrested because he did not want to see her put into jail. He stated that he felt really bad about what happened to the victim.

On cross-examination, Defendant admitted that his testimony regarding the events which preceded the victim's death at the sentencing hearing was different than what he had initially told the police. The statement which Defendant gave to the police read as follows:

> According to the suspect he was at home when the victim came
> over. He stated that the victim accused him of seeing other women.
> He stated that she came towards him while he was sitting in a chair
> next to the bed and stated she would kill him if he was seeing
> another woman. It was at this time that he picked up from the
> dresser a thirty-eight caliber revolver and shot her one time in the
> chest.

The Defendant admitted that the statement he gave to the police was not really true. He also admitted that he previously stabbed another person to death, but did not intend to kill that person either.

The trial court denied the Defendant any type of alternative sentencing and sentenced him to eight (8) years incarceration in the Tennessee Department of Correction. The trial court noted that although the Defendant stated that he acted under strong provocation, there was no proof offered that tended "to excuse and justify his conduct. If he acted in self defense, it's a defense. If he didn't, then, he pled guilty, which means he said he didn't act in self-defense." On the issue of the Defendant's age, he noted that this was the second time that he had killed someone.

Another pertinent factor which the trial court addressed was the inconsistency in the Defendant's statements to the court and the police regarding the events which led to the victim's death. The trial court noted that as the Defendant agreed to plead guilty as a Range II Offender to a sentence of eight (8) years, the various mitigating factors offered by the Defendant were not applicable. As far as the Defendant's health is concerned, the trial court believed that the State had a "pretty good second degree murder case . . . and instead of getting fifteen (15) years . . . he got an eight (8) year sentence. It's not a bad

deal for him. That took into consideration his health and his physical condition."

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). As noted above, the Defendant agreed to plead guilty as a Range II Multiple Offender, so he is not within the parameters of Tennessee Code Annotated section 40-35-102(6) and is not presumed to be a favorable candidate for alternative sentencing. Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." Tenn. Code Ann. § 40-35-102(5).

When imposing a sentence of total confinement, our Criminal Sentencing Reform Act mandates the trial court to base its decision on the considerations set forth in Tennessee Code Annotated section 40-35-103. These considerations which militate against alternative sentencing include: the need to protect society by restraining a defendant having a long history of criminal conduct, whether confinement is particularly appropriate to effectively deter others likely to commit a similar offense, the need to avoid depreciating the seriousness of the offense, and the need to order confinement in cases in which less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

The record reveals that the trial court failed to consider all of the sentencing principles and all relevant facts and circumstances. Therefore, the standard of review for this court is de novo without a presumption of correctness. See State v. Connors, 924 S.W.2d 362 (Tenn. Crim. App. 1996). Our de novo review of the entire record on appeal convinces us that the trial court was correct in denying the Defendant alternative sentencing in lieu of incarceration. The burden is on the Defendant to show that the sentence he received is improper, and the Defendant has failed to prove that he is entitled to probation. See Ashby, 823 S.W.2d at 169.

While the Defendant would have us to believe that his age and health constitute circumstances such that he is entitled to probation, there was no testimony other than the Defendant's that his age and health required constant medical attention. In the presentence report, the probation officer reported that Defendant suffered from throat cancer, high blood pressure, arthritis and a slight limp. While the probation officer noted that documentation was received regarding the Defendant's medical condition from the attending physicians at Nashville General Hospital, this information was not provided for our review. The only evidence of medical attention the Defendant receives for his various medical conditions is his own statement that he takes pills daily for his high blood pressure.

Another factor which supports the trial court's decision includes the Defendant's lack of candor. Defendant admitted during the sentencing hearing that he had not been truthful describing the events preceding the victim's death. A defendant's truthfulness is a factor that may be considered and probation may

be denied on this ground. State v. Dykes, 803 S.W.2d 250, 259-60 (Tenn. Crim. App. 1990) (citations omitted). Lack of truthfulness is probative on the issue of amenability to rehabilitation. United States v. Grayson, 438 U.S. 41 (1978).

Other factors favoring Defendant's incarceration include the Defendant's past criminal record and the deterrent effect upon both Defendant and society in general. While Defendant's criminal record is remote in time and many of the offenses committed were not violent ones, their numerosity is significant. In addition, the Defendant has a prior homicide conviction in his criminal record. Although the prior homicide conviction was in 1948, the punishment of two (2) to three (3) years confinement at that time did not deter Defendant from committing the offense in this case, and, therefore, we conclude that incarceration is necessary to protect society by restraining the Defendant. Tenn. Code Ann. § 40-35-103(1)(A).

Defendant argues that this court has previously held that the "fact that the death of another results from the defendant's conduct does not, alone, make the offense sufficiently violent to justify a denial of probation." See State v. Butler, 880 S.W.2d 395, 400-01 (Tenn. Crim. App. 1994). He cites several unpublished cases in support of his argument. See Montgomery v. State, No. 03C01-9401-CR-00380, Sevier County (Tenn. Crim. App., at Knoxville, August 18, 1995); State v. Black, No. 01C01-9401-CC-00006, Robertson County (Tenn. Crim. App., at Nashville, July 14, 1995); State v. Harris, No. 03C01-9505-CR-00131, Hamilton County (Tenn. Crim. App., at Knoxville, April 4, 1996); State v. Pann, No. 02C01-9510-CR-00295, Shelby County (Tenn. Crim. App., at Jackson, June 10, 1996). As the State correctly points out, in each of these cases, there was

a presumption that the defendant was a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), and this court held that the trial court could not deny alternative sentencing on the sole basis that defendant's criminal conduct caused death. The Defendant's case can be distinguished as he was not a presumably favorable candidate for alternative sentencing, and his conduct causing the death of the victim was not the sole factor in denying probation.

As the evidence in the record supports both the factual and statutory basis for the trial court's sentencing decision, this court will not interpose a different sentence. We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
GARY R. WADE, Judge

_____
J. CURWOOD WITT, JR., Judge