IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

## STATE OF TENNESSEE v. NELIUS O. ELLIS

**Direct Appeal from the Criminal Court for Davidson County**
**No. PV-2000-I-59-A     J. Randall Wyatt, Jr., Judge**

_____

**No. M2004-02297-CCA-R3-CD - Filed October 5, 2005**

_____

The defendant, Nelius O. Ellis, contests the trial court's order revoking his probation and reinstating his original sentence. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and J.C. MCLIN, JJ., joined.

Cynthia M. Fort, Nashville, Tennessee (on appeal), and Glenn Funk, Nashville, Tennessee (at trial), for the appellant, Nelius O. Ellis.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 25, 2000, the defendant entered guilty pleas to theft, a Class D felony for which he received a sentence of three years, and evading arrest, a Class A misdemeanor for which he received a sentence of eleven months and twenty-nine days. The sentences were ordered to be served concurrently. Probation was granted.

On July 19, 2001, the defendant entered a guilty plea to possession with intent to sell a controlled substance based upon an arrest occurring on July 8, 2000. The trial court revoked probation on August 3, 2001 but reinstated the probation less than two months later with the first six months of the three-year sentence to be served with intensive supervision.

On April 1, 2004, over two and one-half years later, a warrant was issued charging the defendant with violation of his probation based upon an arrest two weeks earlier for the felonious possession of a weapon. Melda Walker, the probation supervisor, alleged that the defendant had

violated Rules 1 and 3 of his probationary terms, requiring the defendant to comply with the law and to refrain from the possession of firearms.

At the revocation hearing, Officer Mark Anderson of the Metropolitan Nashville Police Department testified that between 2:00 a.m. and 3:00 a.m. on March 15, 2004, he observed the handle of a gun protruding from the back pocket of the front passenger seat of a Cadillac Escalade parked at Club Prizm in South Nashville. Officer Anderson and other officers waited in the parking lot in an effort to identify the occupants of the vehicle. An individual named Pratt opened one of the vehicle's doors and was arrested. The defendant, who had accompanied Pratt to the club, then exited the club. Acting on "information that [the defendant] had driven th[e] vehicle to the club," Officer Tim Reed stopped the defendant in the parking lot. Officer Anderson testified that while a large crowd was in the parking lot, the defendant became "quite vocal and very animated," which ultimately led to the defendant being charged with disorderly conduct and resisting arrest in addition to felony possession of a handgun. During a search of the vehicle, officers found a second gun in the center console of the back seat and $8,000 in cash, of which the defendant later claimed ownership, in the center console of the front seat.

On cross-examination, Officer Anderson admitted that the defendant did not have the keys to the vehicle. He also acknowledged that he did not see the defendant drive the Cadillac at any time and did not see the defendant arrive at the club. Officer Anderson conceded that the cash and the weapons were found in different areas within the vehicle, but did point out that one of the guns was "[w]ithin arm's reach of the driver."

Officer Reed testified that an individual at the club had identified the defendant as the driver of the Cadillac. He stated that when he saw the defendant, he attempted to escort him to the vehicle so as to avoid the large crowd leaving the club, which had just closed. According to the officer, the defendant "stiff-armed" him in an effort to pull away and when the officer tried to gain control over him, the defendant "started twisting and turning, trying . . . to get away." Officer Reed testified that he found it necessary to apply handcuffs because of the defendant's unruly behavior, at which point the defendant began "yelling and cursing and causing a large scene."

Helen Howard, who had been the defendant's probation officer during his intensive probation, testified as a witness on his behalf. She stated that the defendant had successfully completed the intensive probation, which included curfews and drug screens, for over a year while in school. She stated that she transferred the defendant to regular probation after he completed the program.

The defendant did not testify. His counsel argued that the evidence of a violation was insufficient because the officers never saw the defendant inside the vehicle, never saw him operate the vehicle, did not find keys to the vehicle in his possession, and did not observe him actually possess either of the weapons. Defense counsel pointed out that the weapons charge had been dismissed at the preliminary hearing although the other charges had been bound over to the grand jury.

At the conclusion of the hearing, the trial court acknowledged that the handgun charge had been dismissed at the preliminary hearing and also observed that the resisting arrest and disorderly conduct charges had been bound over. The court ruled that the defendant had violated the terms of the probation because he was in the vehicle in which there were two handguns. Based upon that violation and his unruly behavior with the police, the court revoked the defendant's probation and imposed the original sentence.

In this appeal, the defendant argues that the record does not contain any substantial evidence to support the trial court's decision to revoke probation. He submits that the trial court never cited the specific probationary rule violated and that the grounds for the revocation are not reasonably related to any allegations of the warrant.

Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e) (2003); Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated his probation. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Relief can be granted only when "'the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In probation revocation hearings, the credibility of the witnesses is for the determination of the trial judge, who is in the best position to observe witness demeanor. Bledsoe v. State, 215 Tenn. 553, 560, 387 S.W.2d 811, 814 (1965); Delp, 614 S.W.2d at 398. On appellate review, the trial judge's findings in probation revocation proceedings carry the weight of a jury verdict. State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994); Delp, 614 S.W.2d at 398; Carver v. State, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978).

The warrant charged the defendant with violation of Rules 1 and 3 of his probationary terms. Rule 1 required compliance with all laws and Rule 3, by our reading of the probation violation warrant, precluded the possession of any weapons. The trial court found that the defendant was involved with a vehicle in which two handguns were found by police. In the order, the trial court also made specific reference to the defendant's behavior as a basis for revocation, referencing "altercations in front of a night club" that resulted in the charges of resisting arrest and disorderly conduct. Compliance with state and local laws is automatically a condition of probation. State v. Keel, 882 S.W.2d 410, 419 (Tenn. Crim. App. 1994); see also State v. Shannon Lee Beckner, No. 923, slip op. at 8 (Tenn. Crim. App., at Knoxville, Apr. 2, 1991) ("[T]he specific reference in the revocation statutes to violations of our state's laws automatically makes compliance with state law a condition of probation."). Otherwise, due process requires reasonable notice of the conduct to be prohibited. State v. Ash, 729 S.W.2d 275, 279 (Tenn. Crim. App. 1986).

In Harkins, our supreme court ruled that a finding of abuse of discretion (and thus a reversal of a revocation of probation) is warranted only when "the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Harkins, 811 S.W.2d at 82. The state is only required to prove by a preponderance of the evidence that the defendant violated the terms of his probation. Tenn. Code Ann. § 40-35-311(e). The fact that the defendant was never convicted of the charge leading to the revocation is irrelevant. Jeffrey Scott Miles v. State, No. 03C01-9903-CR-00103, slip op. at 4 (Tenn. Crim. App., at Jackson, Jan. 4, 2000). In this instance, the defendant has been unable to establish that the trial judge did not exercise a conscientious and intelligent judgment. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). He had violated his probation in 2001 by the felonious possession of illegal drugs. The trial court heard evidence that he was operating a vehicle in which there were two handguns. There was proof that when he was questioned by the police, he resisted verbally by "yelling and cursing" and physically by "stiff-arm[ing]" Officer Reed, actions which resulted in his arrest on two misdemeanor charges in addition to the felony weapons charge. Under these circumstances, there was evidence to establish that the petitioner, by a preponderance of the evidence, violated the law. There was sufficient evidence, in our view, connecting the defendant to the vehicle and the weapons to warrant revocation. Reliable hearsay established that he was either the driver or an occupant of the vehicle. This evidence was corroborated by the defendant's admission that he was the owner of the $8,000 cash found in the vehicle.

The strict rules of evidence, of course, do not apply in a probation revocation hearing. Barker v. State, 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972). In addition, Tennessee Code Annotated section 40-35-209 provides that reliable hearsay is admissible in a sentencing hearing so long as the defendant "is accorded a fair opportunity to rebut any hearsay evidence so admitted." Tenn. Code Ann. § 40-35-209(b) (2003); see State v. Carney, 752 S.W.2d 513, 514 (Tenn. Crim. App. 1988) (applying this principle to a probation revocation hearing); see also State v. Neblett, No. 01C01-9805-CR-00232 (Tenn. Crim. App., at Nashville, Mar. 17, 1999) (holding that reliable hearsay is admissible at a probation revocation hearing "so long as the defendant had a fair opportunity to rebut the evidence and the evidence otherwise was not introduced in violation of constitutional notions of due process").

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE